FILED

2020 Dec-15  AM 09:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **GLORIA THOMAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:19-cv-02085-AKK** |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM OPINION

Gloria Thomas brings this action under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). The court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision, which has become that of the Commissioner, is supported by substantial evidence. The court therefore affirms the decision denying benefits.

## I.

Thomas worked from home as a part-time, self-employed customer services representative before the onset of her alleged disability. R. 34, 142, 201–02. In January 2017, Thomas applied for Title II disability insurance benefits and Title XVI Supplemental Security Income based on shortness of breath, asthma, hypertension,

1

and migraines.  R. 65–66, 181.  Thomas initially alleged a disability onset date of May 30, 2016, but she later amended it to February 1, 2017.  R. 34, 65, 141.

After the SSA denied Thomas's application, R. 69, she requested a formal hearing before an ALJ.  R. 82.  The ALJ likewise denied her claim.  R. 23.  The SSA Appeals Council declined to review the ALJ's decision, rendering it the final decision of the Commissioner.  R. 1.  Thomas then filed this action for judicial review under 42 U.S.C. § 405(g).  Doc. 1.

## II.

This court's review is limited to determining whether the record contains substantial evidence to sustain the ALJ's decision and whether the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Under 42 U.S.C. §§ 405(g) and 1383(c), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Thus, the court cannot reconsider the facts, reevaluate the evidence, or substitute its judgment for the Commissioner's.  *Id.*  Instead, it must review the final decision as a whole and determine if it is "'reasonable and supported by substantial evidence.'"  *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (quoting *Bloodsworth*, 703

F.2d at 1239).  As the Supreme Court recently emphasized, this burden "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, substantial evidence falls somewhere between a "scintilla" and a "preponderance of evidence."  *Martin*, 894 F.2d at 1529.  If substantial evidence supports the Commissioner's factual findings, then the court must affirm even if the evidence preponderates against those findings.  *See id.*  However, this "does not yield automatic affirmance" despite the limited scope of judicial review, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), and reviewing courts are not to act as mere "automatons."  *Bloodsworth*, 703 F.2d at 1239 (quotation omitted).  Conclusions of law, in contrast, receive de novo review.  *Martin*, 894 F.2d at 1529.

## III.

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Determination of disability under the Act requires a five-step analysis.  20 C.F.R. § 404.1520(a).  Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Commissioner;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id.* (citing 20 C.F.R. § 416.920(a)-(f)).  "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

Claimants, such as Thomas, alleging disability based on their subjective pain must meet additional criteria.  The Eleventh Circuit applies a three-part "pain standard" when a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Under that standard, the claimant must show "(1) evidence of an

4

underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). But medical evidence of pain or its intensity is not required. *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Thus, if a claimant testifies to disabling pain and satisfies the three-part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

An ALJ cannot discredit testimony without articulating "explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561. If the ALJ does not provide reasons for rejecting subjective pain testimony, then the ALJ is deemed as a matter of law to have accepted the testimony as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). "Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence." *Id.* Therefore, if the ALJ either fails to articulate reasons for refusing to credit the claimant's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the claimant's pain testimony and render a finding of disability. *Id.*

5

## IV.

In performing the five-step sequential analysis, the ALJ initially determined that Thomas had not engaged in substantial gainful activity since the date of her application, thereby meeting Step One.  R. 18.  At Step Two, the ALJ found that Thomas had the following severe impairments: hypertension, chronic obstructive pulmonary disorder (COPD), asthma, morbid obesity, anemia, degenerative joint disease of the left knee, coronary artery disease, and migraines.  R. 18.  The ALJ then found that Thomas did not satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."  R. 19.

After answering Step Three negatively, the ALJ concluded that Thomas "has the residual functional capacity [("RFC")] to perform medium work" except that Thomas "can never climb ladders, ropes, and scaffolds. She can have occasional exposure to temperature extremes, dust, odors, fumes, and pulmonary irritants, humidity, wetness, and vibration."  R. 19.  The ALJ added that "[t]here should be no exposure to unprotected heights, hazardous machinery, or commercial driving."  R. 19.  At Step Four, the ALJ observed that Thomas lacked any past relevant work.  R. 21.  In the final step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Thomas] can perform."  R. 22.  To reach that conclusion, the ALJ considered Thomas's age, education, work experience, and RFC

6

alongside the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, and a vocational expert's testimony.  R. 22–23.  Because the ALJ answered Step Five negatively, she concluded that Thomas was not disabled.  R. 23.

## V.

On appeal, Thomas contends that the ALJ erred when she concluded that Thomas has the RFC to perform medium work with certain exceptions.  *See* doc. 11 at 15.  Specifically, Thomas says that the ALJ improperly discredited her pain testimony by applying the wrong legal standard and that substantial evidence does not support the ALJ's decision.  *Id.*  Thomas makes several arguments supporting her contention that the ALJ applied the incorrect legal standard; none are persuasive. First, Thomas cites Social Security Ruling 96-3p for the proposition that the "ALJ failed to properly consider [her] longitudinal medical treatment."  Doc. 11 at 8.  As an initial matter, the SSA rescinded that ruling in 2018.[1]  In any event, the face of the ALJ's decision shows that she thoroughly reviewed Thomas's treatment history from 2016 to mid-2018, as will be discussed below.

Second, Thomas apparently argues that the ALJ failed to provide explicit and adequate reasons for discrediting Thomas's testimony.  *See* doc. 11 at 6.  Thomas

---

[1] *See* Social Security Rulings (SSRs) 96-3p and 96-4p; Rescission of SSRS 96-3p and 96-4p, 83 Fed. Reg. 27816-01 (June 14, 2018) (explaining that SSR 96-3p was rescinded because it was "unnecessarily duplicative of SSR 16-3p").

cites Social Security Ruling 16-3p, which prohibits ALJs from relying on conclusory statements and recitations of the standards when evaluating a claimant's symptoms. *Id.* at 6.  But even under that ruling, the ALJ's three pages of reasoning, including her statements that Thomas's testimony was "not entirely consistent with the" record evidence, was adequate.  *See* R. 19–21; *Wilson*, 284 F.3d at 1226.

Third, Thomas contends that the ALJ did not "consider the totality of the medical records and the combined effects of [Thomas's] severe impairments when making her determination."  Doc. 11 at 9 (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).  The ALJ wrote, however, that Thomas lacked "an impairment or combination of impairments that" equaled a listing and that she had "considered all symptoms" in determining Thomas's RFC.  R. 19.  "[T]hose statements are enough to demonstrate that the ALJ considered all necessary evidence" under Eleventh Circuit precedent.  *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 952 (11th Cir. 2014) (citing *Wilson*, 284 F.3d at 1224–25).  Moreover, the ALJ specifically addressed evidence concerning Thomas's asthma, anemia, COPD, migraines, and obesity.  R. 19–21.  At bottom, the ALJ's "findings and discussion indicate that the [correct] standard was applied."  *Wilson*, 284 F.3d at 1225–26.

Pruning Thomas's legal challenges makes clear that her true grievance with the ALJ's decision is that it allegedly lacks support in substantial evidence.  *See* doc. 11 at 8–14.  The court disagrees.  Based on Thomas's impairments, the ALJ

concluded that Thomas could perform medium work subject to several narrowly tailored limitations.  R. 19.  Because Thomas experiences knee pain and is obese, the ALJ limited her exposure to climbing.  R. 20.  And because Thomas has breathing problems and experiences chest pain, the ALJ limited her to only occasional exposure to potential pulmonary irritants.  R. 20–21.  The same conditions, combined with Thomas's history of migraines, led the ALJ to limit Thomas's exposure to other potentially hazardous conditions.  R. 21.  In the end, the ALJ observed that Thomas's impairments were "somewhat" limiting but "not disabling."  R. 20.  Substantial evidence supports that assessment.

Consider first Thomas's alleged knee pain.  Thomas testified at her administrative hearing that her joint pain, which mostly occurs in her left knee, contributed to her disability.  R. 38.  The ALJ concluded that Thomas's joint degeneration "reasonably causes some pain" but not to the extent alleged.  R. 20. She observed that Thomas infrequently complained of knee pain and took medication for it only as-needed.  R. 20–21.  In response, Thomas points to a handful of occasions when she reported knee pain and received steroid injections as a result. Doc. 11 at 10–11.  But treatment notes from those doctors' visits show that her pain was well-controlled after the injections and that she was advised to seek additional treatment only as required.  R. 557–78, 629–30.  The same notes indicate that Thomas exhibited normal joint movement and strength in all of her extremities.  R.

558, 630.  And although Thomas takes a prescribed medication for her knee pain, her treatment notes establish that she uses it as needed and mostly for her headaches. R. 529, 634.  Finally, a 2018 x-ray examination revealed some degenerative change in Thomas's left knee, but doctors described the change as "mild."  R. 626.

Substantial evidence likewise supports the ALJ's conclusion about the limiting effect of Thomas's shortness of breath and related chest pain.  Thomas testified that her breathing problems render her constantly exhausted. R. 35–37.  But the ALJ observed that Thomas's pulmonary function tests and chest x-rays were "normal" and "unremarkable," revealing "nothing significant."  R. 19–20.  The record amply supports that assessment.  Treatment notes from July 2016 to September 2018 consistently indicate that Thomas's lungs showed no distress and were clear with no abnormalities or deformities.  *See, e.g.*, R. 381, 385, 391–92, 432, 548, 668.  Indeed, the ALJ was clearly importing language directly from Thomas's treatment notes when she described Thomas's test results as unremarkable and normal.  Those and similar words appear throughout Thomas's medical history.  *See, e.g.*, R. 392, 427, 468–69, 649, 668.

Although Thomas's doctor described her asthma as "suboptimally controlled" in early 2018, he also observed that it was "uncomplicated" and "moderate."  R. 615. At a follow up appointment, he wrote that a "mild exacerbation" had prompted Thomas to visit the emergency room but she was "otherwise stable."  R. 616.  In

10

August 2018, he concluded that Thomas's asthma was "much better controlled," though he acknowledged that Thomas had "fairly significant disease." R. 621. To be sure, Thomas points to numerous occasions where she sought treatment for her breathing issues and chest pain from emergency room doctors. Doc. 11 at 12–13. But most of those trips occurred before the onset of her alleged disability. And the two more recent times that Thomas visited the emergency room involved moderate complaints of pain that were resolved quickly after she was admitted. *See* R. 595, 649. Indeed, x-rays from those visits produced no significant findings and showed that her lungs were "clear" and "normal." R. 598, 649. In sum, the ALJ's evaluation of Thomas's breathing issues and chest pain was grounded in substantial evidence.

So too was the ALJ's assessment of Thomas's migraines. At her hearing, Thomas explained that she experiences debilitating migraine headaches once or twice a week. R. 38. She says those headaches usually last for "[a] couple hours during the day" and that her pain registers "anywhere from an eight or nine" on a ten-point scale. R. 38–39. The ALJ observed, however, that Thomas previously reported that she could function through most of her headaches and that doctors attributed her worst headaches to sleep deprivation. R. 19–20. Thomas offers little evidence to undermine that finding. Although she reported daily and worsening migraines in 2014, treatment notes confirm the ALJ's statement that this was "likely due to lack of sleep." R. 265–66. When Thomas described experiencing several

11

severe migraines weekly in 2017, her treatment notes nonetheless confirmed that her prescribed medications were "working well." R. 557–58.  Notes from doctors' visits in 2018 confirm that Thomas reported being able to "function through" most of her headaches, R. 577, and that her headaches were "better." R. 633.  On one of those trips, Thomas's doctor noted that her migraines were controlled with medication.  R. 634.  This evidence substantially supports the ALJ's decision.

Finally, the court reiterates that its sole function on appeal is to determine whether the record contains substantial evidence to support the underlying decision, not to reweigh evidence or substitute its judgment for the Commissioner's.  *Martin*, 894 F.2d at 1529.  "[C]redibility determinations are the province of the ALJ," and courts should "not disturb a clearly articulated credibility finding supported by substantial evidence."  *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citations omitted).  That is true even where the evidence preponderates against the Commissioner's finding.  *Martin*, 894 F.2d at 1529.

## VI.

In conclusion, substantial evidence supports the ALJ's decision that Thomas is not disabled, and the ALJ applied the proper legal standards in reaching that determination.  The Commissioner's final decision is therefore due to be affirmed in a separate order in accordance with this Memorandum Opinion.

**DONE** the 15th day of December, 2020.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE